ZETA R. ERICKSON v. HERBERT ERICKSON AND OTHERS. FIRST NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS AND OTHERS, APPELLANTS.[1]

No. 30,700.

March 27, 1936.

[1]Reported in 266 N. W. 161, 267 N. W. 426.

72

See 181 Minn. 421, 232 N. W. 793; 194 Minn. 634, 261 N. W. 397.
*James E. O'Brien* and *Arthur P. Jensen,* for appellants.
*Harry S. Swensen* and *George S. Grimes,* for respondent.

LORING, JUSTICE.

The plaintiff prevailed in part in an action in which she sought to have certain judgments and claims in her favor and against Herbert Erickson for alimony and support money impressed as a lien on and paid out of the interest of Herbert in a trust created by the last will of his father, John Erickson, deceased. The defendants First National Bank & Trust Company of Minneapolis, Harold C. Erickson, and Harry F. Frisbee are the testamentary trustees of the trust so created. Herbert is the former husband of the plaintiff and one of the beneficiaries of the trust. The judgments for alimony and support money aggregate something in excess of $4,400, and the claims exceed $3,400.

John Erickson's widow has contributed largely to the support of plaintiff's children, and Harold has certain claims against Herbert which both the widow and Harold have sought to have im-

pressed on Herbert's interest in the trust in proceedings in the district court of Stevens county, which supervises the administration of the trust. In view of the disposition which we make of the case, the priority of these claims becomes unimportant in this matter.

By the terms of the trust created in his will, John Erickson, after providing certain devises and bequests, placed all the residue of the estate in trust, with certain provisions for the widow not important here; one-third of the income to her with power of appointment as to her share of the principal; the remaining two-thirds to be held for the equal benefit of his eight children, or their children by right of representation, contingent upon the continuance of their lives, the net annual income to be paid to them in convenient instalments for a period of 20 years from his death; the principal share of each to be transferred free and discharged of said trust unto him or her in four as nearly equal instalments as possible at five-year intervals, beginning with five years from the date of Erickson's death. After plaintiff secured a divorce from Herbert, by a codicil attached to the will, Erickson provided:

"No title in any trust estate created in and by my said last will *or in the income therefrom shall vest in any beneficiary,* and neither the principal nor the income of any such trust estate shall be liable for the debts of any beneficiary, and no beneficiary shall have any power to sell, assign, transfer, encumber, or in any other manner to anticipate or dispose of his or her interest in any such trust estate or the income produced thereby *prior to the actual distribution thereof by the trustees to said beneficiary."* (Italics supplied.)

Five years have elapsed since the death of John Erickson, and the instalment of principal payable to Herbert has been allocated, but not distributed, to him by the trustees. It consists entirely of personal property. A part of the income has also been allocated but not distributed. Herbert is insolvent and has been a nonresident of the state since November, 1930. Plaintiff endeavored to obtain jurisdiction of him by publication.

The trial court took the position that no intent could be implied on the part of the testator that the income of the trust might be

applied in payment of alimony but that such intent might be implied in favor of the judgment and claims for support money for the grandchildren. He also took the view that when the instalments of principal became payable to Herbert they might be subjected to the payment of the judgment and claims for alimony. The recovery for support money out of the income was limited to one-third of such income.

The respondent contends that both the principal and income of the trust estate allocated and payable to Herbert can be sequestered and applied in satisfaction of the judgment and claims for alimony and support. She also claims that the trust created is not a spendthrift trust but a mere dry or inactive trust.

The defendants contend that the trust created by the will is a valid spendthrift trust and that neither the income nor the principal thereof, while in the hands of the trustees, can be reached to satisfy claims for alimony or support money; that the interest of Herbert in the estate was not property within the state of Minnesota so as to give the court jurisdiction to make a judgment or decree which would affect Herbert's interest in the trust.

In this state only such express trusts as are authorized by statute are permitted. 2 Mason Minn. St. 1927, § 8090; Mattson v. United States E. H. Co. 171 Minn. 237, 242, 213 N. W. 893. That a spendthrift trust is valid in this state cannot well be denied after what was said by this court in First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337. Absent from the will of the testator in that case were many of the provisions found in the will of John Erickson. Nevertheless, it was held that the language of the trust under the circumstances of that case evinced a clear intent to place the property and the income therefrom beyond the reach of creditors. Such intent may be implied. 25 R. C. L. p. 358, § 8, n. 11. In passing upon the question presented by the Olufson case, this court cited Nichols v. Eaton, 91 U. S. 716, 725, 23 L. ed. 254; Hyde v. Woods, 94 U. S. 523, 24 L. ed. 264; Spindle v. Shreve, 111 U. S. 542, 4 S. Ct. 522, 28 L. ed. 512; and Shelton v. King, 229 U. S. 90, 33 S. Ct. 686, 688, 57 L. ed. 1086, and quoted at length from the Nichols and Shelton cases. Therefore it will not be necessary for us to

quote so extensively from those cases. But in support of the doctrine laid down in the Olufson case and of our position here, it may be well again to quote a part of what was said in the Nichols case [91 U. S. 725]:

"But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court. * * * Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives,* who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, or uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived."

And in the Shelton case it was said [229 U. S. 97]:

"But a very different question is presented when we come to the powers of a testator to so bestow that which is absolutely his own as to secure its beneficial enjoyment by an object of his bounty without being subject to the claims of assignees or creditors. This court, and the courts of a number of the states of the union, have not accepted the limitation which the English courts have placed upon the right of testamentary disposition, and have sustained trusts having as an object the application of a testator's bequest to the support and maintenance of the recipient of his bounty. They have, therefore, rejected the assumption that liability to creditors and freedom of alienation are necessary incidents to the right to enjoy the rents and profits of real estate, or the income from other property."

In Massachusetts it has been held:

"In creating an equitable estate a donor may carve out and create such equitable rights in property as his fancy may dictate and his imagination devise, without regard to the rights appertaining to the several estates known to the law." Dunn v. Dobson, 198 Mass. 142, 146, 84 N. E. 327. See also Broadway Nat. Bank v. Adams, 133 Mass. 170, 171, 43 Am. R. 504, and Claflin v. Claflin, 149 Mass. 19, 20 N. E. 454, 3 L. R. A. 370, 14 A. S. R. 393.

Some cases hold that only the income and not the corpus of the estate may be protected by spendthrift trust provisions, but we think that the sounder doctrine upholds the validity of a spendthrift trust impressed upon the corpus of the estate. The legal title to the corpus is in the trustees under such provisions as we have before us, and they have full right to transfer the corpus of the estate and reinvest the proceeds thereof, so there is no restraint upon the transfer of the title. Even an absolute fee has been held to be protected by a spendthrift trust provision attached thereto. See note in 91 A. L. R. p. 1088, and cases there cited. And in 2 A. L. R. 858, in an annotation to In re Hall, 248 Pa. 218, 93 A. 944, the editor states the rule:

"Whether the principal of a spendthrift trust which, at the expiration of the trust, is to be handed over to the beneficiary, is to be protected in transmission to him, will depend upon the intention manifested by the creator of the trust."

And he cites numerous cases. Certainly the doctrine laid down by the United States Supreme Court in distinguishing our rule from the English rule is as much applicable to the corpus as to the income. Having definitely departed from the English theory that liability to creditors and freedom of alienation are necessary incidents to the enjoyment of the benefits of the trust, we see no obstacle to subjecting the corpus of the trust fund or property to the spendthrift provisions. Such disposition seems to be well within the provisions of 2 Mason Minn. St. 1927, § 8090.

The principal, as well as the income, was the subject of the testator's bounty, and title to that principal is withheld by the trust

equally with title to the income. There seems to be no logical distinction between income and principal so long as it remains in the hands of the trustee and subject to the provisions of the trust instruments. Boston Safe D. & T. Co. v. Collier, 222 Mass. 390, 111 N. E. 163, Ann. Cas. 1918C, 962; Lathrop v. Merrill, 207 Mass. 6, 9, 92 N. E. 1019; Broadway Nat. Bank v. Adams, 133 Mass. 170, 173, et seq., 43 Am. R. 504; Haskell v. Haskell, 234 Mass. 442, 125 N. E. 601.

We conclude that we have before us a valid spendthrift trust, by which both the principal and interest are free from the claims of creditors and are protected in transmission until actually paid over to the beneficiary.

■ The only question left is whether plaintiff's claim, being one for alimony and support money, may rest upon a different basis from that of other creditors. The trial court found that it was the intent of the testator to free his bequest from any claims for alimony. Up to the time when the plaintiff announced her intention of getting a divorce from Herbert the will stood without spendthrift provision. It was considerably later that the spendthrift features were attached by codicil. Apparently the matter of alimony had been settled by a lump sum award of $1,000 to plaintiff. Nevertheless it may logically be inferred that John Erickson, being well advised, anticipated the attempt of plaintiff to endeavor to share in a large estate by a subsequent attempt to enlarge both her alimony and support money. By the trust the testator provided that the grandchildren should succeed to their father's rights if he did not survive the trust. Expressly and by positive terms he provided that no title should pass to Herbert until he actually received distribution. Neither the income nor the principal was assignable, nor could either be subjected to the rights of other creditors. If any alleged implied exception is contrary to the expressed terms of the trust there is no implied exception. To hold that the testator intended the trust to benefit the grandchildren would be a manifest perversion of his positive language, and there are no circumstances other than his relationship supporting any such implication. It seems clear to us that it was the testator's expressed intent not

only to free the bequest from claims for alimony but also for support money.

Some cases hold that obligations for alimony and support money transcend the provisions of a spendthrift trust and may thwart spendthrift trust provisions by the settlor. Restatement, Trusts, Am. Law Inst. so states the law. We are not impressed with the soundness of that doctrine. In the case at bar it would be an attempt judicially to interpret into the language of the donor provisions contrary to his actual intent as expressed. When unrestrained by statute, it is the intent of the donor, not the character of the donee's obligation, which controls the availability and disposition of his gift. The donee's obligation to pay alimony or support money, paramount though it may be, should not, in our opinion, transcend the right of the donor to do as he pleases with his own property and to choose the object of his bounty. Our conclusion does not arise out of any anxiety for the protection of the beneficiary. In the absence of statute and within the limits as to perpetuities, a donor may dispose of his property as he sees fit, and this includes corpus or principal as well as income. First Nat. Bank v. Olufson, 181 Minn. 289, 232 N. W. 337. As a general proposition, when a donor leaves the interest of the beneficiary assignable or transferable it may be reached by creditors. If by appropriate language the right to transfer is completely restrained, then such interest may not be reached by creditors either at law or by equitable proceeding. To hold otherwise would be to defeat the testator's or donor's right and his manifest intent. If alimony or support money is to be an exception to the protection offered by spendthrift provisions, it must be by some justifiable interpretation of the donor's language by which such implied exception may be fairly construed into the instrument of trust. It cannot logically arise out of the character of the obligation, though some cases so hold. The obligation for alimony and support money may be of higher rank than other debts, but it is nevertheless an obligation in the nature of a debt, and if, as here, no assignment could be made, if no title could reach the beneficiary until the actual receipt of the funds, then equity may not enforce claims of any nature against it. This court

may not by imputing a constructive intent or by a constructive exception thwart the manifest purpose of the donor. The relationship of John Erickson to his grandchildren, standing alone, as it does here, is wholly insufficient, in our opinion, to justify the implications contended for by respondent. The words employed in his will make his purpose clear, and no interpretation can justify a construction that would subject either the principal or interest to claims for alimony or support money until it is actually paid to Herbert. Until he receives it he has no right other than an equitable one to enforce his rights under the trust, and this is not transferable either voluntarily or involuntarily. Neither the corpus nor the income becomes his to be reached by the court until actually distributed. If he should die both would remain in the trust for disposition according to its terms. Counsel for both sides have been diligent in their presentation of authorities. We have examined and considered them all in reaching our conclusions.

The order of the trial court is reversed with directions to amend its findings and conclusions in accordance with the views herein expressed and to enter judgment for appellants.

Reversed.

UPON APPLICATION FOR REARGUMENT.

On May 22, 1936, the following opinion was filed:

PER CURIAM.

On her motion for rehearing the respondent insists that the case should be controlled by 2 Mason Minn. St. 1927, § 8092, which provides:

"When a trust is created to receive the rents and profits of lands, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the person for whose benefit the trust is created, shall be subject in equity to the claims of his creditors, in the same manner as other personal property which cannot be reached by an execution at law."

This contention was rejected by the trial court. The respondent places her chief reliance upon the case of Wetmore v. Wetmore, 149

N. Y. 520, 44 N. E. 169, 33 L. R. A. 708, 52 A. S. R. 752, in which the New York court held that under their statutes the section which corresponds to § 8092 applied with equal force to trusts of personal property; but, aside from the difference between the trust instrument in that case and the one in the case at bar, there is in that state a statutory provision, absent from our own laws, which their courts have construed as making provisions for trusts in real estate equally applicable to personal property. Wisconsin, which has a provision similar to § 8092 and lacks the New York provision making it applicable to personal property, has recognized the distinction between the statutory situation in that state and in New York. Williams v. Smith, 117 Wis. 142, 148, 93 N. W. 464; Lamberton v. Pereles, 87 Wis. 449, 58 N. W. 776, 23 L. R. A. 824. The respondent also relies upon Canfield v. Security First Nat. Bank, 8 Cal. App. (2d) 277, 48 P. (2d) 133, but that case follows the New York construction of their statute, which, as before observed, has a statutory provision not included in ours. The distinction between the New York statutes and our own has been noticed by this court. Congdon v. Congdon, 160 Minn. 343, 360, 361, 200 N. W. 76; In re Tower's Estate, 49 Minn. 371, 375, 52 N. W. 27.

As said by the trial court, the trust in the case at bar is largely one of personal property, and there is no showing in the record of any rents or profits received from real estate included in the trust.

The petition for rehearing is denied.